IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY MARYLAND

| | |
|---|---|
| **Candace E. Alston** ) | |
| 10012 Cedar Hollow Lane ) | |
| Largo, MD 20774 ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO. CAL15-25164 |
| ) | JURY TRIAL DEMANDED |
| v. ) | |
| ) | |
| **Equifax Information Services, LLC** ) | |
| Serve: The Corporation Trust Incorporated ) | |
| 351 West Camden Street ) | |
| Baltimore, MD 21201 ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, Candace E. Alston, and for her complaint against the Defendant Equifax Information Services, LLC ("Equifax"), alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for a consumer seeking actual, statutory and punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. § 1681 et seq (Fair Credit Reporting Act or "FCRA").

### PARTIES

2. The plaintiff is a natural person and resides in Prince George's County, Maryland. She is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

3. Equifax disburses "consumer reports" to third parties under contract for monetary compensation and is a "consumer reporting agency" as defined at §§1681(d)&(f),

### FACTS

1

4. Plaintiff obtained a mortgage loan from the Defendant on November 12, 2010 to purchase 7929 Mandan Road Unit 304 in Greenbelt Maryland (the "Property").

5. Since the inception of the mortgage loan the Plaintiff and Defendant were in dispute or disagreement regarding certain aspects of the loan.

6. Specifically, the Plaintiff disagreed with the terms of the loan of the documents and complained that she was coerced into signing them.

7. Plaintiff sought to change the terms of the loan documents by executing and recording an amended Deed of Trust.

8. Plaintiff sought to obtain Defendant's acquiescence to the her terms by submitting mortgage payments containing annotations that stipulated her payment was conditioned on Defendant accepting the amended Deed of Trust.

9. Plaintiff submitted mortgage payments to Defendant from December 2010 to January 2012.

10. Defendant crossed through Plaintiff's annotations before depositing her mortgage payments.

11. Plaintiff objected to Defendant's depositing of her mortgage payments without accepting the conditions accompanying the payment.

12. Defendant maintained that it would continue to cross through the Plaintiff's annotations on the mortgage payments prior to depositing them.

13. On January 31, 2012 Plaintiff wrote to Defendant and stated that she is "ceasing making payments until Monarch Bank can assure [her] that it will not make unauthorized alterations to [her] checks." She further stated that she was refinancing her loan to satisfy the debt obligation with Defendant.

14. Monarch responded by letter dated January 31, 2012 in which it stated it would report the mortgage account as delinquent if Plaintiff did not make a mortgage payment. Monarch further stated that a "failure to make loan payments on [her] Monarch loan in a timely manner could make it more difficult for [her] to refinance [her] Mortgage loan with a different lender."

15. By letter dated February 15, 2012 Plaintiff "dispute[d] the method in which Monarch [was] processing [her] mortgage check payments" and demanded not to be reported as delinquent for the "account is under dispute [as she was] disputing [Monarch's] method of processing [her] checks." Plaintiff further stated:

> If Monarch were to report me as delinquent to the credit bureaus while I am disputing this account then I may not be able to complete the refinance. In that case I will have no choice but to file a suit against Monarch for causing me to lose an opportunity to refinance my loan.

16. On February 21, 2012 Monarch issued a response stating "[a]s of February 21, 2012, Monarch Bank had not received your loan payment due for February 1, 2012 ... [but] because you have indicated the intent to refinance your mortgage loan, Monarch Bank has decided, at least temporarily, to refrain from assessing a late charge for the month of February against your account and reporting your loan as delinquent to the credit bureaus."

17. Plaintiff wrote to Monarch on March 2, 2012 in which she advised it that she "did not close on the refinance loan because Wells Fargo is reporting me 120 days late on my mortgage payments." She further announced that enclosed with her correspondence was mortgage payments for February and March.

18. Prior to receiving or processing Plaintiff's March 2, 2012 correspondence, Defendant issued its letter dated March 5, 2012 where it stated:

> Please note that we have suspended all late charges and credit reporting until March 15, 2012 in order for you to complete the refinance on the above referenced property.

19. After receiving Plaintiff's March 2, 2012 correspondence, Monarch issued its letter dated March 22, 2012 where it stated:

> Monarch Mortgage received your February 1, 2012 and March 1, 2012 payments and posted them [sic] your mortgage account. We have waived the late fee for the month of February....

20. Thereafter, Plaintiff continued to make monthly payments to Monarch and Monarch continued to report the account as current to the Defendant Equifax.

21. Upon information and belief Monarch Bank began reporting the account 30 days delinquent for the March 2012 payment to the Defendant Equifax sometime between November 2012 and October 2013.

22. On November 17, 2012 Monarch and Plaintiff executed a settlement agreement, which stated, *inter alia*, that Monarch was not reporting Plaintiff delinquent on any of her mortgage payments.

23. During this same time period Ms. Alston was attempting to convince Equifax to delete an erroneous Wells Fargo mortgage account.

24. The Wells Fargo and Monarch Bank mortgage accounts have materially the same terms. The Monarch Bank account payment history is being reported accurately with the exception of a 30 day late for March 2012. The Wells Fargo account is being reported inaccurately.

25. In correspondence dated September 7, 2013 Ms. Alston disputed information in the Wells Fargo and Monarch Bank accounts. Specifically, Ms. Alston stated that the "High Credit", "Terms Duration", "Actual Payment Amount" and "Type of Loan" account

information were being reported inaccurately for Monarch Bank; and that the "Date Opened" information was incorrect for Wells Fargo. She also provided Equifax with the correct information and underlying documents (i.e. promissory note, mortgage payment coupon, credit report) to substantiate her proposed corrections. Had Equifax made the corrections it would have become clear that the accounts had the exact same terms and that the Wells Fargo was a duplicate that should have been deleted.

26. Equifax received Ms. Alston's dispute on September 10, 2013 but either did not investigate the dispute or did not send Ms. Alston the results of its investigation.

27. On October 13, 2014, after 30 days of receiving no response from Equifax, Ms. Alston decided to access her credit report to see if any changes were made. She found that the Wells Fargo mortgage account was no longer being reported in the Negative Information section of the report, but she noticed that the Monarch account was being reported there. The Monarch account was being reported in a negative fashion because the payment history falsely indicated that she was 30-days late in March 2012.

28. On October 14, 2013 Plaintiff sent a dispute letter to Equifax in which she stated:

> Equifax is reporting the Monarch Bank mortgage account as 30 days late in March 2012. I have never been 30 days late on this account. Please investigate this matter and correct my payment history to reflect that I have never been late on this account.

29. Equifax issued the results of its investigation on October 29, 2013 in which it stated Defendant "has verified to OUR company that the prior paying history is being reported correctly."

30. Plaintiff sent another dispute to Equifax on November 8, 2013 where she stated she was not 30 days late in March 2012. Enclosed with her letter was Monarch's

billing statement, which reflected that two processed payment in March 2012 and a remark that the late charge was waived for March 16, 2012. Also enclosed with her dispute letter was Plaintiff's Capital One bank statement that revealed on "March 19, 2012 checks 218 & 219 in the amount of $811.53 each were withdrawn from my bank account."

31. Equifax issued the results of its investigation on December 5, 2013 wherein Monarch "verified to OUR company that the prior paying history is being reported correctly."

32. On December 7, 2013 Plaintiff sent a dispute letter to Equifax that stated "I am enclosing two letters from Monarch Bank that clearly demonstrate that it is erroneous to report me 30 days late in March 2012." Plaintiff then quoted her March 5th 2012 letter, which stated "[p]lease note that we have suspended all late charges and credit reporting until March 15, 2012." Plaintiff then quoted her March 22nd 2012 letter that stated :Monarch Mortgage received your February 1, 2012 and March 1, 2012 payments and [w]e have waived the late fee for the month of February." Plaintiff further explained that "it is the February 2012 payment that is in question for having been late, not the March 2012 payment" and that "Monarch agreed that I would not be marked as late for February's payment."

33. Equifax issued the results of its investigation on December 31, 2013 wherein Monarch "verified to OUR company that the prior paying history is being reported correctly."

34. In February and/or March 2014 Plaintiff disputed the mortgage account again with Equifax. In her dispute letter to Equifax, Plaintiff enclosed a loan transaction summary from Monarch that showed payments made in March 2012. Also enclosed was Monarch's

6

letter from March 22, 2012 that stated Plaintiff's mortgage payments for February and March 2012 were received. Plaintiff then requested that Equifax ask Defendant to verify payments were received in March 2012 and inquire as to whether Defendant agreed to waive the late fee and suspend credit reporting for February 2012.

35. Upon information and belief Monarch instructed Equifax to continue reporting the account as delinquent in March 2012 and Equifax followed Monarch's instructions without performing its own individual assessment of Plaintiff's claims or of the quality of Monarch's investigation.

36. On June 10, 2014 Equifax issued results of its investigation where it again stated Monarch "has verified to OUR company that the prior paying history is being reported correctly."

37. On January 10, 2015 Plaintiff disputed the account with Equifax. In her letter the Plaintiff attempted to show that Monarch was claiming the account was 30-59 days past due for February 2012's payment and that reporting Plaintiff 30-59 days past due for March 2012's payment was patently wrong. Included in her letter was a request to add a statement of dispute that stated "Monarch Bank does not consider me late for the March 2012 payment." The letter concluded with a request for the entire credit file.

38. Equifax did not provide results of its investigation of Plaintiff's January 2015 dispute. Nor did it provide Plaintiff with her complete credit file or even a credit report for that matter. Upon information and belief Equifax continue to report the payment history as 30 days later for March 2012 and did not add Plaintiff's statement of dispute. Plaintiff's Equifax reports dated February 25, 2015 and April 04, 2015 reports March 2012 as 30 days delinquent and does not contain a statement of dispute.

## COUNT ONE: VIOLATIONS OF FCRA

39. Plaintiff incorporate paragraphs 1-38 by reference.

40. Plaintiff's dispute letters included information and documentation that should have resulted in Equifax modifying the Monarch account without even forwarding the dispute to Monarch.

41. Had Equifax performed just a cursory investigation, much less an independent and unbiased investigation, Equifax would have found that Monarch's own records clearly established that Plaintiff made payment in March 2012.

42. Instead of conducting its own investigation of Plaintiff's dispute, Equifax totally and blindly relied on Monarch's investigation. In relying on Monarch, Equifax did not even bother to take any steps to assure Monarch performed a reasonable investigation or to reconcile Monarch's conclusions with the information provided by Plaintiff.

43. As a result of Plaintiff's detailed and well-documented disputes, Equifax had actual knowledge that the Monarch account was not late in March 2012. Despite having actual knowledge that the Monarch account payment history was being reported inaccurately, Equifax deliberately chose to ignore and permit reporting of the inaccurate account.

44. Equifax disbursed Plaintiff's credit reports containing the inaccurate information to several of Plaintiff's creditors or potential creditors or users of Plaintiff's credit reports.

45. Equifax not only disbursed credit reports with inaccurate information on the Monarch tradeline but Equifax refused to include Plaintiff's statement of dispute.

46. On at least two occasions Equifax did not provide Plaintiff with her request for her credit file or the results of its investigation of Plaintiff's disputes.

47. Equifax violated 15 U.S.C. §1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the Plaintiff's credit reports and credit files it published and maintained concerning the Plaintiff.

48. Equifax violated 15 U.S.C. §1681i(a)(1) on multiple occasions by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information.

49. Equifax violated 15 U.S.C. §1681i(a)(2) on multiple occasions by failing to provide Monarch with all the relevant information regarding the Plaintiff's dispute.

50. Equifax violated 15 U.S.C. §1681i(a)(4) on multiple occasions by failing to review and consider all relevant information submitted by the Plaintiff.

51. Equifax violated 15 U.S.C. §1681i(a)(5)(A) by failing to modify the disputed inaccurate item of information upon a reasonable and lawful reinvestigation.

52. Equifax violated 15 U.S.C. §1681i(b)&(c) by failing to provide Plaintiff's statement of dispute in its credit reports that were issued after January 15, 2015.

53. Equifax violated 15 U.S.C. §1681g(a)(1) by failing to provide Plaintiff's with the information in her credit file after receiving a request for Plaintiff for such information.

54. The violations by Equifax were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. Punitive damages are required to change Equifax's reckless disregard for the rights of consumers to obtain accuracy in their credit reports and remove erroneous data. In the alternative, Equifax was negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

55. As a result of the conduct, actions and inactions of Defendant, the Plaintiff suffered actual damages including without limitation, by example only and as described

herein by Plaintiff: out-of-pocket costs, reduced credit score, damage to her financial reputation, loss of credit opportunity, loss of business opportunity, stress and anxiety, frustration, humiliation and emotional and mental distress.

56. The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

WHEREFORE, your Plaintiff demands judgment for actual and statutory damages against Defendants; for her attorneys' fees and costs; for prejudgment and post-judgment interest at the legal rate, and such other relief as the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

**Date: September 8, 2015**

**CANDACE E. ALSTON**

By *Candace Alston*
Candace E. Alston
10012 Cedarhollow Lane
Largo, Maryland 20774
Tel: (301) 350-5780
*Pro Se Plaintiff*
